**R.T. CROW, Respondent,**

v.

**Garland H. BERTRAM, Appellant,**

and

**Warren G. See, Respondent.**

**No. 51700.**

Missouri Court of Appeals,
Eastern District,
Northern Division.

Feb. 10, 1987.

Motion for Rehearing and/or Transfer
Denied March 11, 1987.

Thomas B. Burkemper, Private Atty., Troy, for appellant.

David B. Rogers, Private Atty., Columbia, for respondent.

DOWD, Presiding Judge.

Defendant-vendor appeals from the judgment of the trial court, sitting as trier of fact, granting plaintiff-purchaser specific performance of a contract to convey real estate and ordering vendor to account to co-defendant real estate broker for a sales commission.

On March 1, 1973, defendant-vendor Garland Bertram (hereinafter "Vendor") entered into a contract with the North Central Land Company for the sale of vendor's 940 acre farm in Monroe County located

along the Mark Twain Lake. At the time of the sales contract, all parties contemplated that a portion of this land would be involved in the Cannon Dam Project and would be subject to a condemnation proceeding by the federal government.

North Central Land Company is a fictitious name registered and used by the M–D Land Company. The M–D Land Company, in turn, is a wholly owned subsidiary of Champion Land Company. Plaintiff-respondent R.T. Crow is the sole stockholder of Champion Land Company. The sales contract was assigned to R.T. Crow (hereinafter "Purchaser") on March 11, 1974.

Warren G. See (hereinafter "Broker") is a licensed real estate broker who set up the transaction between vendor and North Central Land Company. Broker entered into a contract with vendor whereby Broker was to act as vendor's agent in selling the property in exchange for a five percent commission. Both parties agreed broker would act as escrow agent and in May of 1973, purchaser deposited $35,325.00 as escrow money with broker.

The original contract called for a closing date of April 15, 1974, over one year after the contract's execution. A first addendum to the contract was made on the same day as the original contract, March 1, 1973. A second addendum to the contract extended the closing date to April 15, 1975.

The evidence showed purchaser had filed for Chapter Eleven Bankruptcy on August 30, 1974, and as a "debtor in possession," his activities were subject to the bankruptcy court. Purchaser was not discharged from bankruptcy until April 15, 1975. In a letter written by purchaser's attorney and agreed to by vendor's attorney, the closing date was again extended to May 15, 1975.

General correspondence between the parties' attorneys then moved back the closing until the filing of a notice of condemnation by the United States Government. A "Declaration of Taking" was filed on December 4, 1975 and a "Notice of Condemnation" was filed on December 15, 1975.

Both parties testified at trial that they were ready, willing, and able to close the sale on or before April 15, 1976, although no further formal amendment to the closing date was set. The evidence showed that in 1975, broker obtained a survey of the property, acquired the abstracts, and secured the availability of title insurance covering the property. Prior to May 1975, vendor had deposited with broker an executed warranty deed for the property.

From the period of December 1975 until April or May of 1976, purchaser instructed his attorney to obtain a new agreement for the property. The newly drafted agreement contained modifications including the addition of vendor's new wife as a party and the extension of the closing date to December 31, 1977. This document was not signed by vendor or purchaser. Closing of the sale never took place.

Purchaser filed suit in the Circuit Court of Monroe County on April 7, 1977. This suit was later dismissed for failure to prosecute.

The present suit was filed on June 26, 1979. In Count I, purchaser requested specific performance of the sales contract. Purchaser, in Count II, pleaded in the alternative for damages for breach of contract. In Count III, purchaser requested the return of his earnest deposit should he fail to prevail on his request for specific performance. In the alternative purchaser requested that vendor be ordered to account to broker for the sales commission should purchaser prevail on the specific performance count.

The court, for some time, attempted to set the case for trial. Eventually the case was docketed for trial on June 17–18, 1982. The case was again continued, however, as this setting conflicted with purchaser's scheduled trip to Africa.

Thereafter, trial was set for September 14–15, 1982. Before trial, the court notified the parties by letter that only the specific performance portion of the case would be tried. The damages count was to be set for a jury trial later. Prior to the commencement of testimony at trial, the court announced it was taking up Count I of purchaser's petition for specific performance and Count III for return of the ear-

nest deposit or payment of the sales commission. At the close of the testimony the court again changed its position stating that it would stand by the agreement that all that was to be taken up was the matter of specific performance.

The court ordered a transcript be prepared and set up a schedule for filing post-trial briefs. Neither purchaser nor vendor filed briefs.

On September 1, 1983, the court entered its judgment, ruling on all three counts of purchaser's petition. As to Count I, the court granted purchaser specific performance of the sales contract. The court, however, left the exact details of performance of the contract to the parties because of the considerable lapse of time since execution of the contract. If the parties were unable to comply with the order by December 1, 1983, they were to present proposals for compliance with the order of specific performance to the court. The court found for vendor on Count II and awarded no damages for breach of contract. As to Count III, the court ordered vendor to account to broker for the sales commission.

Vendor appealed from this judgment in October 1983. This court dismissed the appeal, finding the judgment was not a final, appealable order as the grant of specific performance was dependent on the parties' agreement as to the details of the contract's performance. *Crow v. Bertram,* 681 S.W.2d 6 (Mo.App.1984).

On February 14, 1985, vendor filed his proposal for compliance with the order of specific performance as ordered by the trial court's judgment of September 1, 1983. Purchaser never filed a proposal.

On February 6, 1986, a hearing was held. Thereafter, on April 29, 1986, the trial court entered its "Findings, Order, Judgment, and Decree of Specific Performance." Once again the trial court ordered specific performance of the sales contract, awarded no damages for breach of contract, and ordered vendor to pay broker the sales commission. The judgment also ruled on vendor's cross-claim and counter-

claim, awarded broker $1,300.00 for his services in acting as escrow agent, and allowed a creditor of vendor an equitable lien on any proceeds received by vendor from a condemnation award and from the real estate contract.[1]

Now almost fourteen years following execution of the sales contract, vendor appeals only from that portion of the trial court's judgment of April 29, 1986, granting purchaser specific performance of the sales contract and ordering vendor to pay the broker's commission. Respondents, purchaser and broker, did not file briefs with this court or appear at oral argument.

On appeal, vendor contends the trial court erred in granting purchaser specific performance of the sales contract and in ordering vendor to pay broker the sales commission. We reverse as to the trial court's order granting specific performance, finding purchaser was not entitled to specific performance as he failed to prove by clear and convincing evidence that he tendered performance of his obligations under the contract and further that no valid contract existed because purchaser abandoned his rights under the contract. We reverse and remand as to Count III for a determination on return of the earnest deposit and payment of the broker's commission.

■ Before a court will grant specific performance, the party seeking such relief "must prove by *clear and convincing evidence* that he has performed (or tendered performance of) his portion of the contract." *Drysdale v. Estate of Drysdale,* 689 S.W.2d 67, 70 (Mo.App.1985) (emphasis added). "[A] mere announcement of readiness to settle the transaction, a premature offer to perform, or an offer to close a real estate contract, is not a sufficient tender." 81 C.J.S. *Specific Performance* § 115 (1977).

■ The evidence showed that purchaser deposited the requisite escrow money with broker two months after signing the con-

1. Creditor Central Production Credit Association of St. Louis has filed a motion to dismiss the appeal or in the alternative to affirm the judgment. We deny creditor's motion.

tract. Prior to May 1975, vendor deposited an executed warranty deed for the subject property with broker. Broker had obtained a survey of the property, acquired the abstracts, and secured the availability of title insurance covering the subject property. Purchaser did not deposit the balance due under the contract with the broker or pay such amount into the court upon filing suit.

Purchaser's evidence of tender consists only of his testimony that he has been "ready, willing, and able" to close the contract since April 1975 and at all times since then. Purchaser's testimony is questionable, especially considering he has made no effort to enforce his judgment, neglecting to even file a proposal for compliance with the order of specific performance. Purchaser has not met his burden of showing by clear and convincing evidence that he has tendered performance of his portion of the contract.

 Furthermore, even if purchaser can be said to have tendered sufficient performance of his obligations under the contract, purchaser's conduct provided sufficient evidence that he had abandoned his rights under the contract. Where there is no valid contract between the parties, a court cannot grant the equitable remedy of specific performance. *Adams v. Kerr*, 655 S.W.2d 49, 52 (Mo.App.1983).

 Evidence of abandonment must be clear and decisive. *Miran Investment Co. v. Medical West Building Corp.*, 414 S.W.2d 297, 303 (Mo.1967). Proof of abandonment of rights under a contract, however, may be shown by acts and conduct consistent with an intention to abandon. *Anson v. Tietze*, 354 Mo. 552, 190 S.W.2d 193, 197 (1945).

 The evidence showed purchaser failed to tender performance and procrastinated in affirmatively establishing a definite closing date. Moreover, indicative that purchaser felt the original contract between the parties was no longer in force due to lapse of time, purchaser submitted a new contract to vendor with significant modifications, including the postponing of the closing date to December 31, 1977.

Likewise, purchaser waited until 1977 to seek enforcement of the contract and then failed to prosecute the action, resulting in a dismissal. After re-filing suit in 1979 and receiving a judgment for specific performance in 1983, purchaser did nothing to enforce the judgment.

We reverse the trial court's judgment granting specific performance as purchaser did not prove by clear and convincing evidence that he tendered performance of his obligations under the contract. Further, the evidence showed purchaser had abandoned his rights under the contract and thus no valid contract existed.

 Because we reverse the court's order granting specific performance of the contract and because of the pre-trial agreement that only the specific performance count would be tried, we reverse the trial court's ruling ordering vendor to account to broker for the commission. We remand for a determination of the issues presented in Count III of purchaser's petition as to return of the earnest deposit and payment of the broker's commission.

The judgment of the trial court is reversed in part and reversed and remanded in part.

CRIST and SIMEONE, JJ., concur.