**Dennis E. KASSEBAUM and Sandra L. Kassebaum, Plaintiffs/Respondents/Cross–Appellants,**

v.

**Vernon E. KASSEBAUM and Wanda R. Kassebaum, individually and as trustees, Defendants/Appellants/Cross–Respondents.**

**No. ED 77211.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 30, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 12, 2001.

Application to Transfer Denied
April 24, 2001.

Gael Davis Wood, Eckelkamp, Eckelkamp, Wood & Kuenzel, Washington, MO, for Respondent cross Appellant.

Melvin G. Franke, Buescher & Franke, Washington, MO, for Appellant cross Respondent.

SULLIVAN, Judge.

Dennis E. Kassebaum ("Son") and Sandra L. Kassebaum ("Wife") (collectively "Plaintiffs") filed a petition seeking specific performance of a Contract For General Warranty Deed ("Contract") entered into with Vernon E. Kassebaum ("Father") and Wanda R. Kassebaum ("Mother") (collectively "Defendants"). Defendants counterclaimed for rescission of the Contract. The trial court entered a judgment that neither granted specific performance nor rescinded the Contract, but rather returned "the parties to their intended positions." Defendants appeal from this judgment and Plaintiffs cross-appeal. We affirm as modified the trial court judgment.

Plaintiffs are the eldest son and daughter-in-law of Defendants.[1] Defendants own the family farm consisting of about 312 acres. Son worked with Father on the family farm beginning in 1972, when Son graduated from high school. In 1973, Son married Wife, and they lived on the family farm. In 1980, Son and Wife moved to Wife's father's farm. After an unsuccessful attempt to farm there, Son and Wife moved back to the family farm after about a year and a half. Son and Father continued to work the family farm together until 1989.

In 1989, Father decided to retire, and he approached Son about buying the family farm. After discussions "around the kitchen table," Plaintiffs agreed to purchase the

---

1. Defendants have three daughters and another son.

family farm from Defendants for $300 per acre. Attorney Jonathan Downard ("Downard") drafted the Contract along with a General Warranty Deed from Defendants to Plaintiffs and a Quit Claim Deed from Plaintiffs to Defendants. The documents were executed on April 7, 1989. The latter two documents were to be held in escrow. However, instead of holding the documents in escrow, all three documents were recorded in the following order: (1) the General Warranty Deed; (2) the Quit Claim Deed; and (3) the Contract.

Because of this error, in late 1989 or early 1990, Downard had the parties come to his office to execute new documents with the same terms as the original documents. Defendants do not dispute that they validly executed a second set of documents; however, they do dispute the validity of the quit claim deed ("Exhibit 6"), the general warranty deed ("Exhibit 7"), and the contract for general warranty deed ("Exhibit 8") admitted at trial. The new documents were backdated to April 7, 1989, and all three documents were then held in escrow. Exhibit 8 was recorded in January 1996.

At some point in time, Father notified Son that he would no longer guarantee Son's operating loan on the family farm entered into with a bank in January 1989. Father testified that he took this action in June 1991 because Son was driving a truck, and he did not want Son to purchase his own truck with the money. Son testified that Father notified him on the day the new documents were executed, and in order to continue to pay for the farm, Son began driving a truck. Son drove a truck without pay starting in March 1991, part-time with pay in July 1991, and full-time with pay in 1992. Plaintiffs also began renting out the family farm in 1992. Although Defendants told Son that they did not like him driving a truck, they did not

tell him that they believed doing so violated the Contract. Father testified that he "was unhappy with it, but there was nothing [he] could do" because he "had signed a contract for general warranty deed."

Also in April 1991, Defendants executed a Joint Revocable Living Trust Agreement, an Assignment of Interest in Contract for General Warranty Deed, and a quit claim deed to themselves as trustees of the trust transferring the family farm to the trust. The quit claim deed was recorded in June 1991.

In light of this recording and the delayed recording of Exhibit 8, Downard suggested to Son that he get a general warranty deed from the trust to be held in escrow, and Son agreed. Downard sent a letter to Defendants explaining the situation. In April 1996, Defendants met Downard at his office. At this meeting, Defendants refused to execute a general warranty deed from the trust because they felt they did not need to because they had signed the General Warranty Deed in 1989. Father told Downard that, after speaking with another attorney, he did not believe that Exhibit 8 was valid, and he was not going to honor it. Father also said that he wanted to put Son back into his inheritance to receive one-fifth of his estate and not to receive the family farm. At trial, Father denied making these statements. Although Mother did not affirmatively participate in the conversation at the April 1996 meeting, she did not contradict Father's statements.

In September 1996, Plaintiffs, through their attorney, informed Defendants by letter that they believed Defendants had repudiated the Contract, called for a closing date of November 1, 1996, and tendered full payment of the amount owed under the Contract. In a letter dated November 10, 1996, Defendants stated to Plaintiffs that Plaintiffs breached the Con-

tract for various reasons and that Defendants' letter was not an attempt to break the Contract but rather an exercise of their options under it. On December 23, 1996, Plaintiffs filed a Petition for Specific Performance of the Contract based upon Defendants' repudiation of the Contract. Defendants answered with various affirmative defenses going to the validity of the Contract and counterclaimed for rescission of the Contract.

In August 1999, after a court-tried case, the trial court concluded that:

> ... Plaintiffs are entitled to have a Warranty Deed in escrow.... Further, Defendants are entitled to a Quit Claim deed to insure that if Plaintiffs do not make the required payments then they will be able to cancel the Contract for Deed. This will return the parties to their intended positions.

The trial court entered judgment accordingly.

██ In a court-tried case, we will affirm the judgment of the trial court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We accept the evidence and inferences favorable to the prevailing party and disregard all contrary evidence. *Mullenix St. Charles Properties, L.P. v. City of St. Charles,* 983 S.W.2d 550, 555 (Mo.App. E.D.1998). We defer to the factual findings of the trial court, which is in a superior position to assess the credibility of witnesses. *Id.* However, we independently evaluate the trial court's conclusions of law. *Id.*

### DEFENDANTS' APPEAL

██ Defendants present eleven points on appeal. In their point one on appeal, Defendants argue that the trial court erred in not recusing itself under Missouri Supreme Court Rule 2, Canon 2 and Canon 3E, because the trial court showed an appearance of unfairness and lack of impartiality in: (1) its ruling on the contested evidentiary issue of breach/repudiation that was based on Downard's testimony; and (2) its discussion of the validity of Exhibits 6, 7, and 8. Defendants assert that the trial court based its ruling on its personal, extrajudicial opinion of Downard's character and that the trial court's duty to recuse itself did not become known until the trial court entered its judgment.

A handwriting expert testified that the signatures on Exhibits 7 and 8 were not Defendants' signatures. Downard testified that only two sets of documents were prepared by him and each set was executed by Plaintiffs and Defendants in his presence.

In its judgment, the trial court concluded the following:

> The Court does not need to determine the validity of the new set of documents as the original set properly memorized [sic] the intention of the parties and the new documents, Exhibits 6, 7, & 8, have no legal effect. To find that they are forgeries, as the Defendants ask, would require the [C]ourt to cast aspersions on the integrate [sic] of J.L. Downard which the [C]ourt cannot do as it knows him to be of the highest character.

The trial court's statement regarding Downard's character, even if we were to conclude that it showed an appearance of unfairness and lack of impartiality, was immaterial to the trial court's resolution of the legal issue. The trial court specifically stated that it did not need to determine the validity of Exhibits 6, 7, and 8 because the original documents were sufficient for determining the intention of the parties. Therefore, the trial court did not need to rely on the exhibits, and consequently,

Downard's testimony regarding the validity of the exhibits, for its legal conclusion. Any other reasoning would prove illogical because the judgment orders the execution of new deeds. If the trial court had relied on the validity of the exhibits, there would be no need to order the execution of new deeds. Thus, we find no material error in the trial court failing to recuse itself. *See* Rule 84.13(b).[2] Accordingly, Defendants' point one on appeal is denied.

In their point two on appeal, Defendants argue that the trial court erred in sustaining Plaintiffs' objections to Defendants' proffered evidence and offers of proof with regard to Defendants' beliefs, reliance, knowledge, presumption and understandings leading to the Contract as being in violation of the parol evidence rule because the evidence was admissible as affirmative defenses to Plaintiffs' claim for specific performance as well as Defendants' counterclaims for rescission. Defendants assert that the evidence goes to mistake, inadequacy of consideration, failure of consideration, constructive fraud, fraudulent concealment, breach of contract, and breach of confidential relationship. The offers of proof essentially deal with Defendants' belief that Son would farm the family farm exclusive of outside work and that Son did not have a right to choose not to farm exclusively.

■ The parol evidence rule prohibits evidence of prior or contemporaneous agreements that vary or contradict the terms of an unambiguous and complete contract absent fraud, common mistake, accident or erroneous admission. *CIT Group/Sales Financing Inc. v. Lark*, 906 S.W.2d 865, 868 (Mo.App. E.D.1995). The rule is a substantive rule that limits the evidence from which inferences may be drawn and that, in turn, defines the limits of the contract. *Id.* If the contract appears to be a complete agreement on its face, it is conclusively presumed to be a final agreement between the parties. *Id.* Parol evidence may not be used to create ambiguity in an otherwise unambiguous contract or to show that an obligation is other than that expressed in the written agreement. *Id.*

■ We find the Contract to be an unambiguous and complete agreement on its face. All pertinent information is provided, such as the parties' names, a description of the property, and the sale price and payment scheme. The Contract contains no language evidencing any obligation of Son to farm the family farm exclusive of outside work, and thus the trial court found that there was "much talk about the parties' intention that Son would 'farm' the family farm. None of these intentions were ever placed in any written document."

■ Further, the evidence and offers of proof cited by Defendants do not fall into the exceptions to the parol evidence rule argued by Defendants. Although Defendants' testimony indicates their belief that Son would farm the family farm exclusive of outside work and that Son did not have a right to choose not to farm exclusively, Defendants cite no specific, detailed representation by Son that he agreed to indefinitely farm the family farm exclusive of outside work. Nor do Defendants cite any evidence of concealment by Son of an intention to change his mind about farming after entering into the Contract. Further, we cannot place an obligation on Son to inform Defendants that he had the right to change his mind about farming at some point in the future when the idea may never have entered his mind at the time of the Contract's execution. After all, Son

**2.** All rule references are to Mo. R. Civ. P.2000, unless otherwise indicated.

had worked the family farm with Father for about ten of the twelve years prior to the Contract. Thus, Defendants' evidence and offers of proof do not meet the fraud exception to the parol evidence rule.

■■■■ Additionally, although extrinsic evidence may be used to show lack of consideration, this exception to the parol evidence rule only applies to contracts in which the named consideration is a mere recital of a fact of something done. *Lark,* 906 S.W.2d at 868. If the expressed consideration is one of the terms of the contract itself, then the consideration is considered a part of the contract that cannot be contradicted, added to, or subtracted from by parol evidence. *Id.* at 869. Although Defendants argue that Son's farming the family farm exclusive of outside work was a primary consideration to them, the Contract contained the sale price and a payment scheme, and the trial court found that Plaintiffs have made their installment payments. Thus, Defendants' evidence and offers of proof do not meet the consideration exception to the parol evidence rule. Accordingly, Defendants' point two on appeal is denied.

■■■■ In their third point on appeal, Defendants argue that the trial court erred in not ordering rescission of the Contract and declaring title in Defendants because a failure of consideration and inadequate consideration existed. Defendants assert a failure of consideration because Son stopped farming the family farm exclusive of outside work and inadequate consideration because the sale price of $300 per acre was inadequate compared to the fair market value of the land in 1989 at $1,600 per acre and at the time of trial in 1999 at $3,300 per acre.

■■■■ To justify the extraordinary relief of rescission, the party seeking such relief should present clear, cogent, and convincing evidence that it is warranted. *Signature Pool & Court, a Div. of Classic Pools, Inc. v. City of Manchester,* 743 S.W.2d 538, 541 (Mo.App. E.D.1987). Failure of consideration alone generally is insufficient to warrant rescission. *Id.* Similarly, mere inadequacy of consideration is no ground for claiming rescission. *Frey v. Onstott,* 357 Mo. 721, 210 S.W.2d 87, 93 (1948).

The Contract provided for a sale price of $93,600, with an interest rate of 6% per year, payable over 25 years. The Contract also provided that Plaintiffs pay the taxes on the family farm. Father testified that he originally suggested a purchase price of $300 per acre and that he knew the value of the farm at the time of the Contract's execution. Father explained that in order for Son to farm, he had to sell Son the farm at a reduced price. Under these circumstances, we find no inadequacy of consideration.

Further, the Contract contained no provision specifying that part of the consideration for the sale of the farm was for Son to farm the family farm exclusive of outside work. Thus, there can be no failure of consideration because Son stopped farming the family farm. We agree with the trial court that if the matter "was important enough to be a matter that would control the Contract, it should have been in the Contract."[3] Defendants, as the party now claiming the importance of the condition, cite no evidence indicating that the condition was raised with Downard when he drafted the Contract.

---

**3.** We would, however, have difficulty accepting a restriction of one's employment as a condition to a real estate transaction.

Additionally, Son testified that, although everybody understood he would continue to farm the family farm, he never specifically discussed with Defendants that his farming the family farm exclusive of outside work was a condition to the sale of the farm. Son also testified that he still regards himself as a farmer, and if "the prices come back to the point that [he] can make money at it," he would return to farming full-time "in a minute." Accordingly, Defendants' point three on appeal is denied.

█ In their point four on appeal, Defendants argue that the trial court erred in not ordering rescission of the Contract and declaring title in Defendants because of their mistaken understanding, belief, presumption, and reliance that Son would farm the family farm exclusive of outside work and their ignorance of Son's right to change his mind and his belief that he could change his mind.

█ A unilateral mistake occurs when only one party has an erroneous belief as to the facts. *Matter of the Estate of Hysinger*, 785 S.W.2d 619, 624 (Mo.App. E.D.1990). To justify rescission because of a unilateral mistake, the mistake must relate to the existence or non-existence of a material fact as it exists at the time of the agreement, not to a future contingency. *Id.* Rescission may be granted when the other party knows of the mistake or the mistake is so obvious that it should have been known or when enforcement of the contract would be unconscionable and relief would impose no substantial hardship on the other party. *Id.*

At the time of the Contract's execution, both Plaintiffs and Defendants assumed that Son would farm the family farm exclusive of outside work. The record does not indicate that Son knew about, nor should he have known about, Defendants' mistaken belief that Son did not have a right to change his mind about farming in the future. Even Son did not know at the time of the Contract's execution that future financial conditions would cause him to stop farming. We cannot hold him to a duty to inform Defendants that he had the right to change his mind about farming at some point in the future when the idea may never have entered his mind at the time of the Contract's execution. Further, enforcement of the Contract would not be unconscionable, as the farm would remain in the family with the eldest son. Rescission, however, would impose substantial hardship on Plaintiffs, as they have made all required payments on the Contract for over ten years and improvements to the farm in excess of $68,000. Accordingly, Defendants' point four on appeal is denied.

█ In their points five and six on appeal, Defendants argue that the trial court erred in not ordering rescission of the Contract and declaring title in Defendants because of innocent concealment (constructive fraud) or active concealment (fraudulent concealment) in that Son concealed from them his belief that he had a right to change his mind and not farm the family farm exclusive of outside work when he led Defendants to believe that he would do so.

Again, at the time of the Contract's execution, Son merely represented to Defendants his intention to farm the family farm exclusive of outside work. Son could not innocently or actively conceal from Defendants his belief that he had a right to change his mind about farming the family farm exclusive of outside work, nor that he would change his mind, when he likely was not aware of that belief at the time of the Contract's execution. Further, the record reveals no indication that Son intentionally or constructively deceived Defendants. Therefore, we conclude that Son had no

knowledge of any information to conceal from Defendants, innocently or actively. Accordingly, Defendants' points five and six on appeal are denied.

In their point seven on appeal, Defendants argue that the trial court erred in not ordering rescission of the Contract and declaring title in Defendants because of Son's breach of an implied term of the Contract in that he was to farm the family farm exclusive of outside work which went to the heart and substance of the Contract.

The following rules control the exercise of judicial authority to insert an implied term into a contract: (1) the implication must arise from the language used in the contract or it must appear from the language used that the implication was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (2) the implication must be indispensable to effectuate the intention of the parties; (3) the implication can only be justified on the grounds of legal necessity; (4) the implication can only be justified where it can be rightly assumed that it would have been made if attention had been called to it; and (5) there can be no implication where the subject is completely covered by the contract. *Conservative Fed. Sav. and Loan Ass'n v. Warnecke,* 324 S.W.2d 471, 479 (Mo.App.1959). It is not enough to say that the implied term is necessary to make the contract fair, or that without such implied term the contract would be improvident or unwise, or that the contract would operate unjustly. *Id.*

We find nothing in the language of the Contract that compels the implication of the specific provision urged by Defendants nor is the suggested implied term an obvious omission. Also, the suggested implied term is not indispensable to effectuate the intention of the parties. The trial court found that Defendants "had the desire to keep the 'family farm in the family.' " The Contract fulfills that desire. Further, we find no legal necessity justifying the suggested implied term. Additionally, although Son may have intended to farm the family farm exclusive of outside work at the time of the Contract's execution, we cannot rightly assume that Son would have agreed that this intention, without the option of changing his mind, should be a condition to the Contract. Accordingly, we cannot find that the Contract included by implication the restrictive provision sought by Defendants. Defendants' point seven on appeal is denied.

In their point eight on appeal, Defendants argue that the trial court erred in the following findings of fact:

7. ... There is nothing to define what it means to 'farm,' i .e. does he have to do it himself or may he, as he has done, allow someone else to do the actual farming on a rental agreement? ...

8. A second set of documents like those described in paragraph 4 above was prepared by Mr. Downard, in an effort to correct the recordation problem created when the deeds were unintentionally recorded. These new documents are 'Exhibits Nos. 6, 7, and 8.' Everyone agrees that these new documents had the same terms as the original set of documents, Exhibits Nos. 1, 2, and 3, yet the defendants refused to sign new documents like 'Exhibit 1.' This amounts to a breach.

Defendants assert that the seventh finding of fact is not supported by any evidence because "all parties knew that to 'farm' at the time of the [Contract] meant to farm the family farm exclusive of outside work." On the contrary, Son testified

that everyone did not understand that farming meant farming exclusive of outside work.

Defendants assert that the eighth finding of fact, that Exhibits 6, 7, and 8 were the new documents, is against the weight of the evidence when the trial court's personal desire to vindicate Downard is discounted. Again on the contrary, not only did Downard testify that Defendants executed Exhibits 6, 7, and 8 in his presence, but Son also testified that Defendants executed Exhibits 6, 7, and 8 in the presence of Son and Wife. Additionally, Defendants only challenge their signatures on Exhibits 6, 7, and 8. They admit that a second set of documents with the same terms as the original documents was validly executed. Accordingly, the seventh and eighth findings of fact are supported by substantial evidence and not against the weight of the evidence. However, even if the trial court erred in its eighth finding of fact, in light of our analysis under point one, we again find the error immaterial. Defendants' point eight on appeal is denied.

In their point nine on appeal, Defendants argue the following trial court errors:

(a) the trial court erroneously declared the law in its eighth finding of fact when it found that Defendants' failure to sign a deed in the name of the trust was a breach because (1) vendors only have to have good title at the time of closing and may hold title in a subsidiary; (2) Plaintiffs prior breach excused any duty of further performance by Defendants; (3) Defendants' belief that Exhibit 8 was a fraud showed that the failure to execute a new deed was not an intentional breach; and (4) Defendants protected Plaintiffs in the trust and the assignment of interest;

(b) the trial court erroneously declared and applied the law in Paragraph 3 of its Conclusions when it stated that it did not have to decide the validity of Exhibits 6, 7, and 8 and that they had no legal effect because the recordation of the original deeds destroyed the Contract by destroying the value of the performance or the object or purpose of the Contract;

(c) the trial court erroneously declared the law in Paragraph 4 of its Conclusions with regard to the failure to execute a new deed from the trust because a vendor does not have to have title until the time for closing and may hold title in a subsidiary; and

(d) the trial court erroneously applied the law in Paragraphs 1 and 2 of its Judgment when it ordered Downard to prepare new deeds because it did not have jurisdiction over him.

■ We address Defendants' point nine (a) and (c) together. Defendants cite *Powell v. Bagley,* 862 S.W.2d 412 (Mo.App. E.D.1993), for the proposition that "having title in a subsidiary until the time for closing is neither a breach nor a repudiation." In *Powell,* the clear language of the contract specified that title to the property would be conveyed by warranty deed and the sale would be closed upon the date of the final payment. *Id.* at 413. The Contract requires Defendants to deposit in escrow an executed general warranty deed. Because Defendants dispute the validity of Exhibit 8 and because the trial court did not need to rely on Exhibit 8 for its legal conclusion, an executed general warranty deed is not in escrow, as required under the Contract. There is no dispute that the Contract is valid and that in April 1996, Defendants failed, for whatever reason, to execute a general warranty deed from the trust to Plaintiffs to be held

in escrow. Although Defendants argue that their trust protects Plaintiffs' interests because it binds the trustees to the Contract, the trust is revocable, and thus it cannot replace the general warranty deed required under the Contract.

■ Anticipatory breach by repudiation occurs when a contracting party manifests a positive intention not to perform, either by express statements or by conduct. *Id.* at 414. The trial court found that Defendants manifested, by their words, a positive intention not to perform and that they failed to execute a new warranty deed so that Plaintiffs may be assured that once they make final payment for the family farm, they will receive an appropriate deed. We conclude that the trial court did not err in finding and concluding Defendants' anticipatory breach by repudiation.

■ We now address Defendants' point nine (b). The trial court concluded that the effect of the recording of the General Warranty Deed, the Quit Claim Deed, and the Contract was to first have Defendants deed the family farm to Plaintiffs and then for Plaintiffs to deed it back to Defendants. With the Contract recorded third, the parties were back to their intended position except that there were no documents in escrow. Because the Contract remained valid and binding and Defendants admit that a second set of documents with the same terms as the original documents was validly executed, we find no material error in the trial court's conclusion regarding Exhibits 6, 7 and 8. *See* Rule 84.13(b). We discuss this subpoint further in Defendants' point eleven below.

■ We now address Defendants' point nine (d). In its judgment, the trial court ordered Downard to prepare a new general warranty deed to be executed by Defendants and a new quit claim deed to be executed by Plaintiffs. Because Downard was not a party to the action, the trial court was without jurisdiction to order Downard to prepare new deeds. Thus, this specific portion of the judgment is not binding, and we modify the judgment accordingly. However, the error did not materially affect the merits of the action. Rule 84.13(b). Therefore, Defendants' point nine on appeal is denied.

In their point ten on appeal, Defendants argue that the trial court erred in ruling that Defendants repudiated or breached the Contract because Defendants were excused from any further duty of performance by Son's breach of not farming the family farm exclusive of outside work.

We have already concluded that Son's farming the family farm exclusive of outside work was not part of the Contract, and therefore his decision not to do so was not a breach of the Contract excusing Defendants from any further duty to perform. Accordingly, Defendants' point ten on appeal is denied.

■ In their point eleven on appeal, Defendants argue that the trial court erred in ruling that the Contract remains in effect because the value of the performance or the object or purpose of the Contract was destroyed, and thus the Contract was destroyed in that the deeds that were to be held in escrow were erroneously recorded. Defendants assert that the trial court failed to apply the doctrine of commercial frustration because the erroneous recording of the deeds destroyed or nearly destroyed the value of the performance or the object or purpose of the Contract.

■ Under the doctrine of commercial frustration, if the happening of an event not foreseen by the parties and not caused by or under the control of either party has destroyed or nearly destroyed either the value of the performance or the object or purpose of the contract, then the parties

are excused from further performance. *Howard v. Nicholson,* 556 S.W.2d 477, 481–482 (Mo.App.1977). The doctrine of commercial frustration grew out of the demands of the commercial world to excuse performance in cases of extreme hardship. *Id.* at 483. We find no extreme hardship here. Although the General Warranty Deed and Quit Claim Deed were erroneously recorded prior to the Contract, the Contract remained valid and binding and Defendants admit that a second set of documents with the same terms as the original documents was validly executed. Thus, neither the value of the performance nor the object or purpose of the Contract has been destroyed or nearly destroyed, and certainly the family farm has not been destroyed. Accordingly, the trial court did not err in failing to apply the doctrine of commercial frustration. Defendants' point eleven on appeal is denied.

### PLAINTIFFS' CROSS–APPEAL

In their point on cross-appeal, Plaintiffs argue that the trial court erred in failing to order specific performance of the Contract because Defendants had repudiated the Contract and Plaintiffs tendered performance by tendering full payment of the amount owed under the Contract.

The party seeking specific performance must prove by clear and convincing evidence that he or she has performed, or tendered performance of, his or her portion of the contract. *Holtmeier v. Dayani,* 862 S.W.2d 391, 405 (Mo.App. E.D. 1993). A mere announcement of readiness to settle the transaction, a premature offer to perform, or an offer to close a real estate contract, is not a sufficient tender. *Crow v. Bertram,* 725 S.W.2d 634, 636 (Mo.App. E.D.1987). Plaintiffs identify the following as evidence of their tender of performance: (1) the September 1996 letter from Plaintiffs to Defendants in which Plaintiffs called for a closing date and tendered full payment of the amount owed under the Contract; and (2) at trial, Plaintiffs admitted into evidence a letter of commitment from their bank committing to loan Plaintiffs sufficient funds to pay off the balance of the Contract.

The trial court did not find that Plaintiffs tendered performance. The trial court is afforded much discretion in deciding whether to award the equitable remedy of specific performance. *McBee v. Gustaaf Vandecnocke Revocable Trust,* 986 S.W.2d 170, 173 (Mo. banc 1999). The equitable remedy of specific performance is not ·a matter of right but is a remedy applied by courts of equity depending upon the facts in the particular case. *Holtmeier,* 862 S.W.2d at 405. We find the trial court did not abuse its discretion in failing to order specific performance because it ordered the parties to perform in such a manner as to put them in the position that they intended under the Contract.[4] Accordingly, Plaintiffs' point on cross-appeal is denied.

We find the judgment of the trial court is supported by substantial evidence, it is not against the weight of the evidence, nor does it erroneously declare or apply the law. We modify Paragraphs 1 and 2 of the trial court judgment to remove the requirement that Downard prepare new deeds. As so modified, the judgment of the trial court is affirmed.

MOONEY, P.J., and SIMON, J., concur.

---

**4.** The trial court's judgment also was reasonable because the Contract provides that Plaintiffs "shall have the right to prepay this contract in whole or in part only after the death of both" Defendants, and this contingency has yet to occur.