**ADBAR, L.C., Appellant,**

v.

**NEW BEGINNINGS C–
STAR, Respondent.**

**No. ED 81159.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 25, 2003.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 16, 2003.

Jonathan T. Baum, Clayton, MO, for appellant.

Gary K. Burger, Jr., St. Louis, MO, for respondent.

GLENN A. NORTON, Judge.

Adbar, L.C. appeals the judgment in favor of New Beginnings C Star on Adbar's claim for breach of lease. We reverse in part and affirm in part.

## I. BACKGROUND

New Beginnings provides rehabilitation services for alcohol and drug abuse to both adults and adolescents. In the fall of 1999, New Beginnings was searching for a new location and entered into negotiations with Adbar for lease of a building in the City of St. Louis. New Beginnings received a preliminary indication from the City's zoning administrator that its use of the property constituted a permitted use under the zoning regulations. New Beginnings and Adbar subsequently entered into a three-year lease. The total rent due for the three-year term was $273,000.

After the lease was executed, the City denied New Beginnings' application for an occupancy permit on the grounds that the operation constituted a nuisance use under the zoning regulations. At trial, Alderman Freeman Bosley, Sr. testified that due to his opposition to New Beginnings moving into his Ward, he had called the zoning administrator and asked him to reverse his preliminary indication that New Beginnings' operation constituted a permitted use.

New Beginnings appealed the denial of the occupancy permit to the board of adjustment. Alderman Bosley and other neighborhood residents testified in opposition to New Beginnings at the board's hearing. The board affirmed the denial of the permit. New Beginnings then sought a writ, which was granted by the circuit court, and New Beginnings was issued an occupancy permit. Alderman Bosley contacted the judge who issued the writ and asked him to reverse his decision. The judge declined. A few weeks later, at the City counselor's request, the City revoked New Beginnings' occupancy permit. New Beginnings filed a motion for contempt with the circuit court. The motion was granted, and the City re-issued the occupancy permit.

After the permit was reissued, New Beginnings began preparing to move in, including having some construction done on the building. At this same time, Alderman Bosley contacted then State Representative Paula Carter, chairwoman of the appropriations committee responsible for New Beginnings' state funding. Alderman Bosley asked Representative Carter to "pull the funding" for New Beginnings. Alderman Bosley did not get a commitment from Representative Carter, but told her that "if you don't get their funding, you are going to have trouble running" for re-election.

New Beginnings alleges that it was then contacted by Michael Couty, director of the Missouri Division of Alcohol and Drug Abuse, who threatened to rescind all state contracts with New Beginnings if it moved into the new location. New Beginnings convened a meeting of its board of directors to conduct a conference call with Director Couty. New Beginnings alleges that during that conference call Director Couty repeated his threat to rescind funding if it moved into the new location. At the end of the meeting, New Beginnings' board decided not to occupy the building they had leased from Adbar. At trial Director Couty denied making any such threats to New Beginnings.

Adbar filed a petition for breach of the lease. New Beginnings asserted a defense of legal impossibility. On the first day of the trial, New Beginnings was granted leave to amend its answer to add the defense of commercial frustration. Following a bench trial, the trial court ruled that New Beginnings was excused from its performance under the lease because of commercial frustration. This appeal follows.

## II. DISCUSSION

On review of this court-tried case, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We accept the evidence and inferences favorable to the prevailing party and disregard all contrary evidence. *Kassebaum v. Kassebaum,* 42 S.W.3d 685, 692 (Mo.App. E.D.2001). We will defer to the factual findings of the trial judge, who is in a superior position to assess credibility; however, we independently evaluate the court's conclusions of law. *Id.*

### A. Commercial Frustration

■ In its first point on appeal, Adbar asserts that the trial court erroneously applied the law when it excused New Beginnings' performance under the lease due to the doctrine of commercial frustration. We agree.

■ The doctrine of commercial frustration grew out of demands of the commercial world to excuse performance under contracts in cases of extreme hardship. *Kassebaum,* 42 S.W.3d at 699. Under the doctrine of commercial frustration, if the occurrence of an event, not foreseen by the parties and not caused by or under the control of either party, destroys or nearly destroys the value of the performance or the object or purpose of the contract, then the parties are excused from further performance. *Id.* If, on the other hand, the event was reasonably foreseeable, then the parties should have provided for its occurrence in the contract. *Werner v. Ashcraft Bloomquist, Inc.,* 10 S.W.3d 575, 577 (Mo. App. E.D.2000). The absence of a provision in the contract providing for such an occurrence indicates an assumption of the risk by the promisor. *Id.* In determining foreseeability, courts consider the terms of the contract and the circumstances surrounding the formation of the contract.

*Id.* at 577–578. The doctrine of commercial frustration should be limited in its application so as to preserve the certainty of contracts. *Id.* at 578.

New Beginnings alleged that the troubles it faced obtaining its occupancy permit, along with the actions of Alderman Bosley and Director Couty, combined to rise to commercially frustrate the lease agreement with Adbar. Ultimately, New Beginnings' funding was never rescinded. In this case the intervening event was merely the *possibility* that the funding may be rescinded. For an organization that receives funding from the State, the possibility that their funding may be reduced or even completely rescinded is foreseeable. Furthermore, while the zeal with which Alderman Bosley attempted to keep New Beginnings out of his ward may have been surprising to the parties, it is certainly foreseeable that a drug and alcohol abuse treatment facility might encounter neighborhood resistance when attempting to move into a new location. At trial, the CEO of New Beginnings admitted that both the elimination of New Beginnings' funding and opposition from neighborhood groups were foreseeable.

This court has addressed similar intervening events before. In *Conlon Group, Inc. v. City of St. Louis*, this Court found that structural defects in a 100 year-old building were foreseeable and, despite increased development costs, the agreement with the City's redevelopment authority remained intact. 980 S.W.2d 37, 40–41 (Mo.App. E.D.1998). In *Shop'N Save Warehouse Foods, Inc. v. Soffer*, this Court found that a lessor could foresee that its supermarket tenant might bring an action to enforce a radius restriction in the lease to keep him from leasing property to another supermarket chain. 918 S.W.2d 851, 863 (Mo.App. E.D.1996). The Court noted that, while neither party wanted the eventual result, the doctrine of commercial frustration did not provide a means to avoid a bad result. *Id.* The possibility that New Beginnings' funding may be threatened was foreseeable. Yet, New Beginnings did not provide for that possibility in the lease. Therefore, New Beginnings assumed the risk that their funding may be threatened and that it might frustrate the purpose of the lease.

In addition to this event being foreseeable, neither the value of the performance nor the purpose of the lease was destroyed. The purpose of the lease was to allow New Beginnings to operate a rehabilitation center at the location of the property. New Beginnings' funding was never rescinded or even restricted. Alderman Bosley's continued interference with New Beginnings efforts to provide rehabilitation treatment to addicts of drugs and alcohol certainly made, and would have continued to make, business difficult for New Beginnings. However, neither the value of the performance nor the object or purpose of the lease was destroyed or nearly destroyed.

Therefore, the doctrine of commercial frustration does not excuse New Beginnings performance under the lease. Point I is granted.

In its second point on appeal, Adbar asserts that the trial court erred when it allowed New Beginnings leave to amend its answer to add the defense of commercial frustration. In its third point on appeal, Adbar asserts that the trial court's finding that the state threatened to revoke New Beginnings' funding and that New Beginnings' funding would have been revoked had they moved into the building were against the weight of the evidence. Because we hold that the affirmative defense of commercial frustration is not applicable, there is no reason for us to address Adbar's Points II and III on appeal.

## B. Restoration of Property Damages

In its petition for breach of lease, Adbar alleged that the building sustained property damage that was the fault of New Beginnings. Adbar asked the trial court to award it the cost of restoring the property. The trial court found that Adbar had failed to prove by a preponderance of the evidence the nature and extent of any damages to the property caused by New Beginnings.

In its fourth point on appeal, Adbar alleges that this finding was against the weight of the evidence. "Appellate courts should exercise the power to set aside a decree or judgment on the ground·that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy*, 536 S.W.2d at 32. Conflicts in the evidence are for the trial court to resolve. *Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 483 (Mo. banc 1980). The trial court, when sitting as the trier of fact, may believe all, part or none of the testimony of any witness. *Id.*

The trial court heard testimony from an architect hired by Adbar concerning how much it would cost to the restore the property to its original condition. However, on cross-examination the architect testified that he had not seen the building prior to the work done by New Beginnings. The trial court also heard testimony concerning damage done to the building by vandals. After hearing all of this testimony, the trial court determined that Adbar had not proved by a preponderance of evidence the nature and extent of any damages to the property caused by New Beginnings.

The trial court's finding that Adbar did not prove property damages to the building attributable to New Beginnings is supported by substantial evidence and is not against the weight of the evidence.

Point IV is denied.

## III. CONCLUSION

The judgment that New Beginnings is excused from the lease under the defense of commercial frustration is reversed and the cause is remanded for a new trial in accordance with this opinion. The judgment in all other respects is affirmed.

WILLIAM H. CRANDALL, P.J., and SHERRI B. SULLIVAN, J., concurring.