Robert SACKETT, Respondent,

v.

Robert HALL and Roco Petroleum Corporation, Appellants.

No. 56400.

Supreme Court of Missouri,
Division No. 1.

Feb. 22, 1972.

Rehearing Denied April 10, 1972.

Schaeffer & Schaeffer, Clayton, for respondent.

Mellitz, Mass, Agatstein & Frank, Sylvan Agatstein, Clayton, for Roco Petroleum Corp.

David M. Dolan, St. Ann, for Robert Hall.

LAURANCE M. HYDE, Special Commissioner.

Action for damages in two counts. Count I was for $4,509.90 for value of personal property alleged to have been taken and $10,000 punitive damages. Count II was for $28,000 actual and $50,000 punitive damages claiming conspiracy to deprive plaintiff of his business. The Court directed a verdict for defendant on the second count. The jury found for plaintiff against both defendants for $4,712 on the first count for the value of plaintiff's personal property and for defendant Roco on its counterclaim for $1,741.09 ($1,283.09 plus interest of $458). All parties have appealed.

Plaintiff admits his debt to Roco and agrees that the verdict on Count I for the verdict for the value of his personal property taken was $202.10 more than he claimed and is willing to remit that amount. With that remittitur we affirm.

In August 1962 plaintiff purchased the filling station operation from Hall, who had leased from Roco, for $9,600, paying $7,100 cash and giving a note for $2,500 secured by a chattel mortgage on equipment purchased from Hall. The note had no due date and stated it was payable "Per amortization." The chattel mortgage described the note it secured, as follows: "Amortization note in the amount of $2,500.00 payable at the rate of one-half (.005) cent per gallon on gasoline deliveries." The payments to Hall were made to him monthly by Roco, which added one half cent per gallon to the amount to be paid to them each month by plaintiff. These payments to Hall were usually in the first week of each month, the last shown being March 7, 1963. Apparently another payment would have been due in April 1963 and it appears that a payment was made by Roco to Hall during that month. However, on March 14, 1963, Roco gave written notice to plaintiff that his lease from Roco was cancelled as of March 25, 1963. Roco's lease to plaintiff made in August 1962, when plaintiff bought from Hall, provided "either party hereto may cancel this lease by giving the other ten days written notice of intention to do so." Plaintiff's monthly gasoline sales never were much more than half of the amount the parties expected and declined more during the winter.

On March 26, 1963 (the day after Roco's notice fixed for termination) Roco sent employees to take possession of the station. However, on that date Internal Revenue officers came and sealed the station because plaintiff had not paid the levy previously made for amounts due for his employees' taxes withheld by him. Plaintiff later paid these taxes and on April 2, 1963, Internal Revenue officers removed their seals. Seven Roco employees were there, as was plaintiff with a lawyer, and also Hall's lawyer. Two policemen were there at the request of Roco. Plaintiff demanded the keys be given to him but Roco's employees took possession of the station, changed locks, and locked in the station the personal property covered by Hall's chattel mortgage. Other personal property of plaintiff, not included in the chattel mortgage, was placed outside the station. Plaintiff took it away and it is not involved in this action. Hall took possession of the mortgaged per-

sonal property, advertised a foreclosure sale for April 18, 1963 and bought this property at the sale.

Plaintiff and Roco had since February 1963 been considering termination of their business relations, partly because of lower gasoline sales than expected and also plaintiff's lack of capital. Plaintiff claimed the winter decrease in sales was partly due to a defective condition of gasoline pumps, one of which was not operative part of the time in January 1963. Plaintiff said he told Roco's representative in February 1963 that he desired to leave the station. It appears there was a custom of the industry for the lessor to assist the lessee in procuring a purchaser for his business when he wanted to sell out. Plaintiff claims Roco wrongfully terminated the lease in violation of this custom. Plaintiff said he found a prospective purchaser and that Roco also claimed to have a purchaser, but before any negotiations for sale were started Roco sent plaintiff a notice of termination of the lease. After possession was taken from plaintiff on April 2, 1963, Hall commenced operation of the station and a new lease was later made with a corporation created by Hall.

■ Defendants' first claim is that plaintiff's petition shows it is a replevin suit for the property mortgaged to Hall which must fail because it conclusively appears that defendants did not have possession of that property at the time this suit was filed. While the petition is inartfully drawn, our view is that it states facts sufficient for an action for conversion of the mortgaged property in the station, which was plaintiff's proper remedy. 15 Am.Jur.2d Chattel Mortgages § 181, p. 349; 14 C.J.S. Chattel Mortgages § 215, p. 817. Construing it as an action for conversion also disposes of defendants' claim of error in giving Instruction No. 5 on the ground that it did not require a finding that the property described in the chattel mortgage must have been in the possession of defendants at the time the suit was filed.

■ Count I was for taking plaintiff's personal property from the station and was submitted against both defendants on Instruction No. 5 requiring findings that plaintiff was the owner of the equipment purchased from Hall and that defendants "did wrongfully take possession and wrongfully detain this property from plaintiff." Defendants make no claim of error in their brief about this instruction other than that hereinabove mentioned on the theory that plaintiff's action was replevin. Defendants' real claim is that the evidence shows that possession of the chattels was taken by defendant Hall, after plaintiff was legally dispossessed from the service station, under rights claimed by him under the chattel mortgage. It is true as defendants say the lease to plaintiff provided for its termination on ten days' notice. However, our view is that the jury could reasonably find that defendants acted improperly in forcibly taking possession of the station and the mortgaged property over plaintiff's protest. Defendants had police officers there to prevent plaintiff from doing more than protest. The lease did provide when the lessor declares the lease ended the lessor may "reenter the premises * * * with or without process of law and expel, remove or evict Lessee * * * using such force as necessary." The Supreme Court of Ohio has held a similar provision in a chattel mortgage void as contrary to public policy. Hileman v. Harter Bank & Trust Co., 174 Ohio St. 95, 186 N.E.2d 853. The Supreme Court of California in Jordan v. Talbot, 55 Cal.2d 597, 12 Cal.Rptr. 488, 492, 361 P. 2d 20, 24, 6 A.L.R.3d 161, 167, said: "[A] provision in the lease expressly permitting a forcible entry would be void as contrary to the public policy," as set out in forcible entry and unlawful detainer statutes. See also Spencer v. Commercial Co., 30 Wash. 374, 71 P. 53; see also annotation 6 A.L.R. 3d 177, 186, where it is said: "An increasing number of jurisdictions uphold what seems to be the modern doctrine that a landlord otherwise entitled to possession must, on the refusal of the tenant to surrender the leased premises, resort to the

remedy given by law to secure it; otherwise he would be liable in damages for using force or deception to regain possession." An early Missouri case, Krevet v. Meyer, 24 Mo. 107, 109, held a tenant may maintain an action of forcible entry and detainer against his landlord, although at the time of the entry the tenant may have been holding over after the determination of his term, saying: "This was done that men might learn to appeal to the law for injuries done them, and not undertake the redress of their own wrongs." See also Steinke v. Leicht, Mo.App., 235 S.W.2d 115, 123; Emerson v. Sturgeon, 59 Mo. 404.

The action of replevin was available to Hall. 15 Am.Jur.2d Chattel Mortgages § 180, p. 347; 14 C.J.S. Chattel Mortgages §§ 218, 219, p. 824; Lacey v. Giboney, 36 Mo. 320. The mortgage involved provided the mortgagee could take possession of the mortgaged property "in case of failure to pay the installments of said note * * * as they become due," which had not occurred and is not claimed; or in case the mortgagee "at any time feel insecure." Defendants seek to justify taking possession of the mortgaged property under that provision. The "insecurity clause" has been considered in many cases with some disagreement as to its application and effect. 15 Am.Jur.2d Chattel Mortgages §§ 203, 204, p. 368; 14 C.J.S. Chattel Mortgages § 182, p. 788; Annotation 125 A.L.R. 313. The prevailing view seems to be that an arbitrary power is not conferred but the mortgagee must act reasonably with probable cause to apprehend a loss and that his good faith and the existence of reasonable grounds are for the jury. A Missouri case in point is See v. Automobile Discount Corporation, 330 Mo. 906, 50 S.W.2d 993, where as here there had been no default in payments. There a mortgage on an automobile contained an insecurity clause. The mortgagee demanded possession because the mortgagor, a farm tenant, had advertised a sale saying he was going to Colorado. The mortgagee's demand for possession of the car was refused. The mortgagee then got a deputy sheriff to go for the car with a repossession order prepared by the mortgagee. The mortgagor, believing the officer was acting under legal process, allowed him to take the car. We held: "Defendants, having taken the car over plaintiff's protest through the sheriff acting colore officii, cannot be heard to say that, because plaintiff yielded to the demand of the sheriff and offered no resistance requiring the use of actual physical force by the sheriff to take the car, therefore no force was used in taking the car from plaintiff. It is true no physical force was used, but the taking of the property in the manner shown by the evidence was a taking by coercion and intimidation amounting to force within the meaning of the law, and constituted constructive force and a civil trespass." 50 S.W.2d, l. c. 995. We reversed and remanded the judgment for defendants. We hold here that the jury could reasonably find that there was a wrongful taking of plaintiff's property.

In any event, plaintiff is not now claiming ownership of this property. Hall has it and has not asked for anything more in satisfaction of the debt. He filed no counterclaim and there is no testimony as to any amount claimed to be due him. Plaintiff points out that the mortgage erroneously shows him as the creditor and Hall as the debtor. However, the status of the parties is clear from all the evidence and the entire documents construed together, so we consider this erroneous designation immaterial to the issues of this case. The judgment for plaintiff on his first count should be affirmed for $4,509.90 ($4,712 less remittitur of $202.10) and judgment for Roco on its counterclaim should be affirmed for $1,741.09. Plaintiff suggests an additur of interest on his claim from April 2, 1963 but cites no authority to show he is entitled to interest prior to the date of his judgment.

■ As noted, the Court directed a verdict for defendants on Count II of plaintiff's petition. Plaintiff alleged therein a conspiracy to deprive him of his business without payment of adequate compensation, to prevent him from selling his business to

anyone other than Hall and to interfere with the conduct of his business so as to make it unprofitable for him to continue. Plaintiff alleged that Roco refused to talk to his prospective purchaser and that Roco refused to maintain the gasoline pumps in proper operating condition. Plaintiff also alleged other matters as to which there was no attempt to prove such as inducing the Internal Revenue Service to seize plaintiff's property. Plaintiff's evidence mainly shows what Roco did or failed to do. As to Hall it only shows plaintiff bought originally from Hall and gave him a chattel mortgage, on which monthly payments were made in proportion to gasoline purchases; that Hall's lawyer was present when Roco repossessed the station; and that Hall thereafter took possession of the mortgaged property in the station and had it sold under foreclosure. Hall also took over the operation of the station. Plaintiff cites Rosen v. Alside, Inc., Mo.Sup., 248 S.W.2d 638, 643, for a definition of conspiracy and also for its holding that: "* * * if a plaintiff fails to prove a conspiracy or concerted design, he may yet recover against one or more of the defendants shown to have been guilty of the alleged wrong." Plaintiff does have a judgment against both Hall and Roco for the value of his personal property. In Rosen v. Alside, Inc., supra, plaintiff notes we said: "The gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy or concerted design resulting in damage to plaintiff." 248 S.W.2d, 1. c. 643. In that case the plaintiffs claimed breach of an alleged contract for them to be exclusive dealers of Alside products in Missouri and Kansas. Plaintiffs were authorized to sell Alside products but not made exclusive dealers according to Alside. Plaintiff's account was delinquent and we found they did not perform their part of the agreement to sell Alside's products. We reversed the judgment for plaintiffs saying "plaintiffs failed to make out a case upon their theory of a conspiracy." Plaintiff's own evidence here shows he never was able to obtain the sales volume he expected.

On its claim of conspiracy, plaintiff also cites Wooldridge v. Scott County Milling Co., Mo.App., 102 S.W.2d 958, 965, saying: "Conspiracy may be proved by direct or circumstantial evidence, and may be inferred from proof of concerted action if the facts and the evidence justify a reasonable inference of the existence of the conspiracy." Plaintiff also cites Sandler v. Schmidt, Mo.Sup., 263 S.W.2d 35, 40, saying that collusion "may be inferred from the acts of the parties and the surrounding circumstances." Plaintiff further cites State on Information of Eagleton v. Stupp Bros. Bridge & Iron Co., Mo.Sup., 380 S.W.2d 382, 394, saying "proof of an overt act would necessarily support an inference as to continued existence of a prior conspiracy." However, we do not find that plaintiff's proof in this case shows a prior conspiracy. Plaintiff's claim of conspiracy is mainly based on the presence of the representatives of Hall and Roco at the time Roco took possession of the station when it was released by the Internal Revenue Service. There is no evidence of any collusion by Hall prior to that time with Roco or even contact with plaintiff. So far as the record shows he only received the monthly checks mailed to him by Roco for payments on plaintiff's mortgage debt to him. "Conspiracies cannot be established by a mere suspicion, nor does evidence of mere relationship between the parties * * * show a conspiracy." 15A C.J.S. Conspiracy § 93(1), p. 916. It was reasonable for Hall to have a lawyer present to protect his interests under his chattel mortgage when the station was released by Internal Revenue Service. Taking possession of the mortgaged property at that time over plaintiff's protest is another matter as to which the jury found against defendants and upon which we have hereinabove ruled.

Plaintiff's evidence did not show Hall did anything to prevent him from selling his station business or was notified that plaintiff wanted to sell it. In fact he does not claim he told Roco he wanted to sell until sometime in February 1963. Plaintiff said

Roco then made an attempt to buy but did not want to buy everything he had at the station. The trouble with a gasoline pump was in January 1963 and it was replaced by Roco. Plaintiff said this pump was out of order three or four weeks. There is no evidence that Hall even knew about that. It appears that an assessment for the withholding taxes due to Internal Revenue Service was made February 15, 1963, about the time plaintiff told Roco of his desire to sell. Plaintiff's own evidence showed he was unable to develop the volume of business he expected at any time during his operation of the station and finally made his own decision that he wanted to get out of it. On March 14, 1963 Roco notified plaintiff of its termination of the lease under the ten days provision but at about the end of this period Internal Revenue Service took possession under its tax lien and kept the station sealed until April 2. Our conclusion is that the trial court correctly decided there was no substantial evidence to show anything more than that Hall and Roco were each trying to protect their own separate interests; Hall to collect his mortgage and Roco to terminate its lease and get possession of the station. The fact that Hall thereafter leased the station from Roco does not prove a prior conspiracy. This was a reasonable development since the property covered by his chattel mortgage was there and it was beneficial to both parties to get the station operating after the Internal Revenue Service released it. The judgment against plaintiff on Count II should be affirmed.

Judgment for plaintiff on Count I is affirmed after remittitur of $202.10 for $4,509.90 and judgment for Roco on its counterclaim for $1,741.09 is affirmed. Judgment for defendants on Count II is also affirmed.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.

ON MOTION FOR REHEARING

PER CURIAM:

■ Plaintiff claims he should have been permitted to go to the jury on Count II of his petition against Roco even though he failed to show a conspiracy between Roco and Hall. The basis of plaintiff's Count I was for recovery of the value of his personal property mortgaged to Hall which was turned over to Hall when Roco took possession of the station. Plaintiff had judgment for the amount claimed for this which we affirmed. Plaintiff also sought in Count I $10,000.00 punitive damages for wrongful taking of this property but the jury awarded no punitive damages.

The basis of Count II was plaintiff's claim that commencing in December 1962 Roco and Hall conspired to interfere with the conduct of his business to make it unprofitable and to prevent him from selling to anyone but Hall. We agree with the trial court's view that the evidence did not support that claim. Plaintiff's business was in trouble before that time. Plaintiff did not notify Roco he wanted to sell the station until in February 1963 when it appears he was delinquent in payments due the Internal Revenue Service. Plaintiff just failed to develop the amount of business he expected and required and the lease gave either party the right to terminate it on ten days' notice. There was "talking" about a sale but no negotiations developed. It would seem that the seizure of the station by the Internal Revenue Service may have been more of a surprise to Roco than it was to plaintiff because plaintiff knew he was delinquent in his payments.

In the recent case of Adkison v. Hannah, Mo.Sup., 475 S.W.2d 39, although we said there was sufficient evidence to support "submission that the plaintiffs conspired to damage the defendants' business" we reversed their counterclaim judgment for damages because we found their evidence "fails to demonstrate in any manner the nature and extent of the damages to the defendants' business which the acts charged

to plaintiffs caused." We also said: "Equally lacking was evidence that the harassment of the plaintiffs was the cause of the defendants' inability to pay off the deed of trust." In that case there was testimony of overt acts of actual and physical interference with defendant's property and access to it. There is nothing like that in this case and our conclusion is that all the evidence shows plaintiff's failure to develop a profitable business was not caused by Roco by conspiracy or otherwise.

The motion for rehearing is overruled.