VALENTINE'S, INC., a Missouri
Corporation, Plaintiff–
Respondent,

v.

Michael NGO and Phung La Ngo
and Ngo Properties, LLC,
Defendants–Appellants.

No. 28570.

Missouri Court of Appeals,
Southern District,
Division Two.

April 10, 2008.

Jason N. Shaffer, Springfield, for Appellants.

Patricia J. Shilling, Ozark, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Michael Ngo, Phung La Ngo, and Ngo Properties, LLC, (collectively "Appellants"), appeal the judgment of the Greene County Circuit Court granting judgment to Valentine's Restaurant, Inc. ("Respondent"), in the amount of $100,000, pursuant to a liquidated damages clause contained in a lease agreement between the parties. Appellants contend that the trial court erred in awarding liquidated damages to Respondent because the liquidated damages clause is not enforceable in that it is a punitive rather than a compensatory award. Appellants further allege that the finding of the trial court is against the weight of the evidence in that there is no evidence that Respondent suffered any monetary damages from the alleged breach. We disagree with both contentions and affirm.

In the light most favorable to the judgment, the evidence is that Appellants and Respondent entered into an agreement on January 15, 2002, for the lease of 3,850 square feet in the Imperial Plaza shopping center, which is located at the intersection of Battlefield and Campbell in Springfield, Missouri. Respondent intended to use the space for a restaurant called "Valentine's," a full-service casual restaurant that serves primarily steaks, pasta, and seafood. Respondent and Appellants negotiated the terms of the lease, including the necessary improvements to make the space suitable for a restaurant and the obligations of each party to make and pay for the improvements. Respondent was responsible for paying for the majority of the improvements, at an estimated cost of $100,000.

Respondent agreed to pay monthly rent for the first five years of $4,652.08, $4,931.20 for the next five years, and $5,276.39 for the remaining five years, for a total of approximately $890,000 over the 15–year lease period. During the negotiations, Respondent and Appellants also discussed a non-competition clause and a liquidated damages clause, which was incorporated in the final lease agreement as paragraph 19. The pertinent provision at issue here is as follows:

> As part of the consideration of this Lease, [Appellants] agree[ ] to not lease any space in the retail building ... to any other restaurant which serves steaks, seafood or pasta. In the event [Appellants] violate[ ] this non[-]competition clause it agrees to pay [Respondent] the sum of $100,000.00 as and for liquidated damages, it being acknowledged, that damages in the event of such a breach would be difficult, if not impossible to ascertain.

After entering the lease and agreeing to the non-competition clause, Appellants rented space in the same retail building to a Mexican-themed restaurant named "Tamale King's Baja Grill & Mexican Restaurant" ("Baja Grill"). Respondent alleged a violation of the lease agreement and filed suit seeking payment of the $100,000 liquidated damages clause. At trial, Respondent presented menus from Baja Grill, which included items such as "Steak Ranchero" and the "Baja Fish Platter"; Respondent further produced evidence that several of the dishes offered by Baja Grill were similar to its meals and that some were offered at a cheaper price. Respondent also introduced pictures of steak and seafood entrées actually served to Joseph Sunseri, the owner/operator of Respondent, and his friends. The trial court found that Appellants did lease a space in the same shopping plaza as Valentine's to a restaurant that serves steak and seafood

and, as a result, breached the lease agreement with Respondent. Further, the trial court found that Respondent was damaged by the breach and Respondent was entitled to enforce the liquidated damages clause. This appeal followed.

Appellants challenge the judgment of the trial court in two points. Appellants allege that the liquidated damages provision is unenforceable because it is a penalty that far exceeds actual damages that was designed to compel compliance with the lease agreement and that Respondent failed to prove any actual monetary damages caused by the breach. As both points are intertwined in the law, we shall discuss them together.

Missouri has adopted the Restatement Second of Contracts. *Paragon Group, Inc. v. Ampleman*, 878 S.W.2d 878, 881 (Mo.App. E.D.1994).

> The general rule is liquidated damages clauses are valid and enforceable, while penalty clauses are invalid. Liquidated damages are a measure of compensation which, at the time of contracting, the parties agree shall represent damages in case of breach. Penalty clauses, on the other hand, are a punishment for breach.

*Paragon*, 878 S.W.2d at 880–881 (internal citations omitted).

> Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy[.]

Restatement (Second) of Contracts § 356(1) (1981).

> These rules provide a guide to distinguishing between the two clauses. For a damages clause to be valid liquidated damages: (1) the amount fixed as damages must be a reasonable forecast for

the harm caused by the breach; and (2) the harm must be of a kind difficult to accurately estimate.

*Id.* at 881. Appellants challenge both the finding of any harm and that it is a reasonable forecast of the harm. We disagree and find the liquidated damages clause contained in the lease is a reasonable forecast of difficult-to-estimate damages should the contract be breached.

The liquidated damages provision in this lease agreement was for the amount of $100,000, which was approximately the amount of investment Respondent anticipated it would need to make the improvements for its restaurant. It was important to Respondent at the time of the negotiation for the lease to have a long-term lease of at least 15 years and an exclusive right to sell certain types of food in the Imperial Plaza. Joseph Sunseri, testified:

> [I]f I was going to rent the property and I was going to make an investment that I had to protect my investment. So the $100,000 came in as—as the time when we did the lease, before I got the loan and before I got it—exactly how much this was going to cost me, I went to [the builder] and said, "What would this cost me per square foot?" And we came up with a number. That was to protect myself that says that, you know, how much money am I going to put in this thing.
>
> So it was over $100,000 he said, so I put the $100,000 in saying, all right, if you want to rent to somebody that's compensation, then you pay all my improvements, you set me up a restaurant, and it would be your—it would be your money that was put in there.

Sunseri reasoned that if Appellants were going to do something that would harm his investment, then Appellants should be responsible for Respondent's initial improvement costs. Respondent actually spent

$124,000 on improvements to the property before it opened for business and, thereafter, added $140,000 of additional improvements, as well as paid rent of approximately $4,600 per month for four years and three months to the time of trial, for the right to have an exclusive contract to sell steak, seafood, and pasta in the Imperial Plaza.

Appellants, however, contend there is no proof of harm because Respondent failed to prove an actual loss of profits. It is true that to recover liquidated damages Respondent is required to show it suffered actual harm. *Strouse v. Starbuck*, 987 S.W.2d 827, 829 (Mo.App. S.D. 1999). "While this need not be a precise dollar amount, it nevertheless must be shown that some harm or damage, in fact, occurred." *Goldberg v. Charlie's Chevrolet, Inc.*, 672 S.W.2d 177, 179 (Mo.App. E.D.1984). While it is clear that the $100,000 is not directly related to any actual loss of profits that would occur if Appellants breached the lease agreement by leasing space to another restaurant that sold steak, seafood, and pasta, Missouri courts have consistently noted that actual damages for breach of a real estate contract are uncertain and difficult to prove. *Warstler v. Cibrian*, 859 S.W.2d 162, 165 (Mo.App. W.D.1993). Where the difficulty of proof of loss is great, the court allows significant latitude in setting the amount of anticipated damages. *Paragon*, 878 S.W.2d at 881. We find sufficient, competent evidence that Respondent was harmed with the $100,000 anticipated initial improvement cost, the additional $140,000 in improvements, and the approximate $239,200 rent to the date of the trial.

Turning our attention more fully to Appellants' first contention, they argue that the liquidated damages clause far exceeds actual damages to the extent that it amounts to a penalty. They partially base this contention on their claim in their second point that Respondent failed to prove any damages. Keeping in mind that the more difficult it is at the time of the contract to determine the actual damages due to a breach, we find less weight is given to the factor that requires the amount of liquidated damages to be a reasonable forecast of the harm caused by the breach. Restatement (Second) of Contracts § 356 cmt. b (1981).

We have already noted the amount Respondent estimated it would need for improvement costs to the restaurant. Additionally, the contract was for 15 years with Respondent paying a total of $890,000 in rent; therefore, the $100,000 in liquidated damages is only 11.2% of the total value of the contract. Missouri courts have upheld liquidated damages clauses amounting to 16%, 30% and even 66% of the total value of the contract. *See, e.g., Paragon*, 878 S.W.2d at 881 (where a liquidated damages clause was 16.7% of the value of the entire lease agreement, the court found the amount to be a reasonable estimate of damages); *Standard Imp. Co. v. DiGiovanni*, 768 S.W.2d 190, 191–92 (Mo.App. W.D.1989) (where the valid liquidated damages clause of a home improvement contract that was terminated one month after execution was equal to 30% of the cash sale price); *Taos Const. Co., Inc. v. Penzel Const. Co., Inc.*, 750 S.W.2d 522, 525–27 (Mo.App. E.D.1988) (liquidated damages equaling 66% of actual harm caused by subcontractor was reasonable).

The negotiated contract indicated Respondent agreed to improve the facility at a cost of approximately $100,000 and pay $890,000 in rent over 15 years while Appellants agreed to lease to Respondent 3,850 square feet of space with an exclusive right to open a restaurant that sells steak, seafood, and pasta in the Imperial Plaza. Appellants do not dispute that the contract was breached. Because Appellants breached the contract, Respondent no

longer has the benefit of being the exclusive restaurant for steaks and seafood and has been harmed in not getting the benefit of its bargain. In view of the substantial financial investment Respondent made in the business, we find no error in the application of the law. The liquidated damages clause contained in the lease agreement was valid and enforceable; it does not act as a penalty, and bears a reasonable relationship to the amount of loss anticipated by Respondent in the case of a breach of its exclusivity clause. Both points are denied.

The judgment of the trial court is affirmed.

LYNCH, C.J., BARNEY, P.J., concur.